UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br>**ABDELKADER AL HAWASLI** | |
| **SAJA MIKHAIL,**<br>Plaintiff-Appellant,<br>**v.**<br>**ABDELKADER AL HAWASLI,**<br>Defendant-Appellee. | **2:25-CV-12349-TGB-CI**<br>HON. TERRENCE G. BERG<br>**ORDER AFFIRMING RULING OF BANKRUPTCY COURT** |

Plaintiff-Appellant Saja Mikhail ("Mikhail") appeals the bankruptcy court's post-trial order overruling Mikhail's objection to Defendant-Appellee Abdelkader Al Hawasli ("Hawasli")'s Chapter 7 Discharge. ECF No. 1. The Court held a hearing on August 13, 2026.

After careful consideration of the arguments advanced in the briefs and during oral argument, the Court concludes that Mikhail's appeal is without merit, and the decision of the bankruptcy court will be **AFFIRMED**.

## I. BACKGROUND

During the time period relevant to this suit, Defendant-Appellee Abdelkader Al Hawasli operated his own medical practice—Hawasli

Associates Surgical Specialists ("HASS")—where he worked as a surgeon. ECF No. 4, PageID.905–908. Plaintiff-Appellant Saja Mikhail is a judgment creditor of Hawasli. *Id.* at PageID.908–909.

On June 10, 2021, Mikhail brought suit against Hawasli for medical malpractice after a thyroidectomy. *Id.* at PageID.905–906. After a three-day trial, the jury rendered a verdict against Hawasli. *Id.* at PageID.906 On January 12, 2024, a $3,509,559.49 judgment was entered against Hawasli. *Id.*

On June 6, 2024, Hawasli filed for Chapter 7 bankruptcy. *Id.* at PageID.907.

### 1. Mikhail's Adversary Complaint Objecting to Hawasli's Discharge

On September 9, 2024 Mikhail brought an adversary complaint objecting to discharge. *Id.* at PageID.126. As relevant here, Mikhail alleged that Hawasli's discharge should be denied under 11 U.S.C. § 727(a)(2) for knowingly and fraudulently making transfers with the intent to hinder, delay, or defraud creditors and under 11 U.S.C. § 727(a)(4) for knowingly and fraudulently making false statements under oath. *Id.* at PageID.195–98.

Specifically, Mikhail alleged that Hawasli conducted a pattern of transfers to family members and entities controlled by family members around the time of her lawsuit and judgment. *Id.* at PageID.187–192. For instance, Mikhail alleges that from 2022 to 2023, Hawasli disbursed

sums from HASS to companies controlled by his sons—such as Dronline, a company located in Dubai and owned by Hawasli's son Mouhammad. *Id.* at PageID.190–92.

Mikhail also alleged that Hawasli's Bankruptcy Schedules and Statement of Financial Affairs ("SOFA"), filed on June 18, 2024, contained a number of false statements and omissions. *Id.* at PageID.192–94. For instance, Mikhail alleged that Hawasli failed to list all the transfers made to Dronline and to his wife, Huda. *Id.* at PageID.194.

**2. The Bankruptcy Court's Order**

On July 14, 2025, following a two-day trial, United States Bankruptcy Judge Mark Randon overruled Mikhail's objections, finding that Hawasli lacked fraudulent intent. *Id.* at PageID.912–17. Judge Randon made extensive factual findings based on the testimony and the exhibits admitted at trial. *Id.* at PageID.905–12.

Judge Randon constructed following timeline of important events:

1. In 2013, Hawasli bought vacant land in Grosse Pointe Shores on a land contract.
2. On November 1, 2017, [HASS] entered into a Software Development Agreement with Tahmeel Fze ("Tahmeel"), a limited liability free zone entity located in Dubai—and owned by his son Mouhammad—to develop the Doctor Online application ("Dronline") meant to connect patients in Dubai, and elsewhere, with physicians in the United States.
3. On May 3, 2018, after the land contract was paid off, Hawasli and his wife entered into a New Construction Contract with HGW Detroit LLC d/b/a Hawasli Homes LLC-owned by his son

Waref-to build an 11,500 square foot custom estate at 707 Lake Shore Road in Grosse Pointe Shores for $4,314,005.05.

4. On December 12, 2018, Hawasli performed a thyroidectomy to treat Mikhail's thyroid cancer.
5. In December 2020, Hawasli received Mikhail's notice of intent to file a medical malpractice lawsuit.
6. On June 10, 2021, Mikhail filed a complaint in the Wayne County Circuit Court against Hawasli for medical malpractice.
7. On October 5, 2022, Hawasli's company, 12 Mile Associates, LLC, sold a medical building; HASS received $1,700,000.
8. On January 4, 2023, Hawasli received $803,925.67 for his Federal income tax refund.
9. On January 12, 2023, Hawasli received $97,634.56 for his State income tax refund.
10. On May 1, 2023, Hawasli and his wife entered into a Subscription Agreement with Tahmeel whereby they agreed to pay a total of $5 million in monthly installments of not less than $40,000 in exchange for a 25 percent shareholder interest in the company.
11. On May 30, 2023, Mikhail's medical malpractice lawsuit was initially scheduled for trial.
12. On September 5-8, 2023, Mikhail's medical malpractice lawsuit went to trial.
13. On September 12, 2023, the jury rendered a verdict against Hawasli.
14. On January 12, 2024, a judgment was entered against Hawasli in a total amount of $3,509,559.49 broken down as follows:
    - A. Post noneconomic damages - $34,680
    - B. Future economic damages reduced to present cash value - $3,347,442.49
    - C. Future noneconomic damages reduced to present cash value - $74,949.04
    - D. Pre-judgment interest through January 5, 2024 - $2,487.96
    - E. Taxable costs - $50,000.

15. On April 14, 2024, the trial court entered an injunction precluding Hawasli from funding Dronline and the Subscription Agreement.
16. On June 6, 2024, Hawasli filed Chapter 7 bankruptcy.

*Id.* at PageID.905–907.

Judge Randon also found that,

> Hawasli has a history of significant financial involvement with his children that predates his awareness of Mikhail's medical malpractice complaint. Besides his multimillion dollar investment in Dronline, through his son Mouhammad's company in Dubai, Tahmeel, in 2018, Hawasli entered into a $4,314,005.05 construction contract to build a home in Grosse Pointe Shores with HGW Detroit LLC (Hawasli Homes), owned by his son Waref. At various times, Hawasli' s third son, Ayhem, has worked as a manager in his medical office; his daughter, Bianca, has also worked in various capacities in his medical office (from a biller to office manager), and she worked for Dronline in testing and promotion. Following her mother's back surgery in 2019, Bianca has also provided caregiving and transportation services for her mother. Hawasli periodically pays his daughter for these services, which would otherwise require the retention and compensation of a third party.

*Id.* at PageID.910.

Additionally, Judge Randon found that,

> Hawasli has made several transfers from his personal bank account, his joint account with his wife, and the HASS business account—an account he maintained after HASS closed to make transfers and pay bills because the bank costs were higher to transfer money overseas from a personal account instead of business account. While there are more, the Court finds the timing of the transfers made to Bianca and Hawasli Homes, to fund the Subscription Agreement, and in

support of Dronline require close scrutiny. Attached to Hawasli's SOFA is a four page single spaced spreadsheet that lists 81 transfers made from his personal and joint bank accounts.

The timing and amounts of the following transfers are relevant:

<u>Date Mikhail Filed Her Complaint Until the Initial Trial Date</u>
Total Payments to Hawasli Homes - $55,000
Total Payments to Bianca - $80,427.47, which includes a $75,000 gift for down payment for a home

<u>Initial Trial Date Until the Actual Trial</u>
Total Payments to Hawasli Homes - $10,000

<u>Actual Trial Until Judgment Entered</u>
Total Payments to Bianca - $21,000
Total Payments to Hawasli Homes - $174,494.14
Total Payments for Dronline - $50,000

<u>Post-Judgment</u>
Total Payments to Bianca - $12,000, which includes a $4,000 gift for her kids' tuition
Total Payments to Hawasli Homes - $10,000

*Id.* at PageID.910–11.

Additionally, Judge Randon found that,

Hawasli also provided a 13 page spreadsheet to the Chapter 7 Trustee at the beginning of the case and to counsel for Mikhail. Eight of the 13 pages listed transfers from his business accounts. Included in that spreadsheet are the timing and amounts of the following relevant transfers from the HASS business account:

<u>Date Mikhail Filed Her Complaint Until the Initial Trial Date</u>
Total Payments for the Dronline - $640,500
Total Payments to Hawasli Homes - $740,891.20

Total Payments to Bianca - $6,000

Actual Trial Until Judgment Entered
Total Payments to Tahmeel for either the Subscription Agreement or Dronline - $180,000
Total Payments for Dronline - $50,000
Total Payments to Hawasli Homes - $35,000

Post-Judgment
Total Payments to Hawasli Homes - $48,800
Total Payments for Dronline - $25,000
Total Payments to Tahmeel for either the Subscription Agreement or Dronline - $40,000

*Id.* at PageID.911–12.

This latter set of transfers are the transfers Mikhail contends Hawasli was required to disclose in his SOFA, but did not.. *See* ECF No. 10, PageID.1116–17 ("The fact that Hawasli separately disclosed some of these transactions to the Trustee in a spreadsheet that was not signed under oath does not satisfy his obligations under the Bankruptcy Code and his requirement to disclose all information requested in the Schedules and Statement of Financial Affairs.").

As to Mikhail's argument that Hawasli should be denied a discharge under 11 U.S.C. § 727(a)(2)(A), Judge Randon concluded that Hawasli lacked the fraudulent intent required under that statute. ECF No. 4, PagelD.913. Specifically, Judge Randon found that while

> [t]he timing of some of Hawasli's transfers, particularly to the businesses of his sons, Mouhammad and Waref, are concerning because they were made during a time period in which Hawasli faced the possibility of a money judgment …,

> Hawasli provided a completely credible and detailed explanation for the transfers. Given the history of Hawasli's investments, the fact that he has been making speculative business investments since 2010, the financial transfers to his children and their businesses—many of which predated Mikhail's allegations of malpractice—and Hawasli' s (and his lawyer's) firm belief that he was in no legal or financial jeopardy from her lawsuit, Mikhail failed to prove that Hawasli made the transfers with intent to hinder, delay, or defraud a creditor. … Believing his medical intervention saved Mikhail's life, Hawasli simply continued to conduct business as he had always done.

*Id.*

As to Mikhail's argument that Hawasli should be denied a discharge under 11 U.S.C. § 727(a)(4)(A), Judge Randon also concluded that Hawasli lacked the fraudulent intent required under that statute. *Id.* at PageID.916–17. Specifically, Judge Randon explained that,

> The Court observed the demeanor of all witnesses—and particularly scrutinized Hawasli—while they testified. They were all credible and Hawasli provided a reasonable explanation for his failure to list the transfers from the HASS account on the SOFA or the spreadsheet that was attached to the SOFA.
>
> Hawasli explained that he believed the SOFA only required him to disclose personal transfers, not transfers made from his business account as the business was not in bankruptcy. Without ruling on whether Hawasli was required to list business transfers, the Court accepts it as an open question. Based on a review of the SOFA, however, the Court accepts Hawasli's explanation that he only had to list personal transfers. For example, Part 3 Question 7 of the SOFA asks, "Within 1 year before you filed for bankruptcy, did *you* make a payment on a debt you owed anyone who was an insider?"

> (Emphasis added). Part 5 Question 13 asks, "Within 2 years before you filed for bankruptcy, did *you* give any gifts with a total value of more than $600 per person?" (Emphasis added). Part 7 Question 18 asks, "Within 2 years before you filed for bankruptcy, did *you* sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?" (Emphasis added). Even if Hawasli's failure to disclose the transfers from his business account constitutes a material omission, it was not done with fraudulent intent. He plausibly believed his personal transfers were all he was required to provide.
>
> Notwithstanding his belief, Hawasli went above and beyond his understanding of what the SOFA required and disclosed his business transfers in a spreadsheet that was provided to the Chapter 7 Trustee at the beginning of the case. Even though this spreadsheet was not signed under oath, the Trustee had it in his possession during the 341 Meeting of Creditors, which was conducted under oath. The upshot is that Hawasli was completely transparent with both his personal and business transfers; Mikhail failed to prove the requisite fraudulent intent for denial of discharge under section 727(a)(4)(A).

*Id.*

### 3. Mikhail's Appeal of the Bankruptcy Court's Order

On July 30, 2025, Mikhail appealed Judge Randon's July 14, 2025 order overruling her objections. ECF No. 1.

On October 3, 2025, Mikhail filed her brief, arguing that the Bankruptcy Court committed reversible errors when it overruled her objections to Hawasli's discharge under Section 727(a)(2)(A) of the Bankruptcy Code and under Section 727(a)(4)(A) of the Bankruptcy Code.

ECF No. 10, PageID.1099. Hawasli responded on October 30, 2025, ECF No. 11, and on August 13, 2026, the Court held a hearing on the matter.

## II. STANDARD OF REVIEW

The Court may hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). The bankruptcy court's factual findings are reviewed under a clearly erroneous standard.

Findings of fact made by the bankruptcy court are reviewed under the clearly erroneous standard. *In re Jones*, 546 B.R. 12, 19 (B.A.P. 6th Cir. 2016); *In re Reinhardt*, 177 F.4th 684, 694 (6th Cir. 2026); Fed. R. Civ. P. 52(a)(6) ("Findings of fact … must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.")."A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *In re Mathews*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (internal quotations omitted). "When reviewing for clear error, the question is simply whether a reasonable person could agree with the bankruptcy court's decision." *Waldman v. Stone,* 698 F.3d 910, 922 (6th Cir. 2012) (citation omitted). The district court should "not disturb the bankruptcy court's findings of fact unless there is the most cogent evidence of mistake of justice." *WesBanco Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs. Inc.),* 106 F.3d 1255, 1259 (6th Cir.1997) (citation removed).

The Court reviews the bankruptcy court's legal conclusions de novo. *In re Westfall*, 599 F.3d 498, 501 (6th Cir. 2010). This means the Court independently reviews the law and gives no deference to the conclusions of the bankruptcy court. *In re Myers*, 216 B.R. 402, 403 (B.A.P. 6th Cir. 1998). "[I]f a question is a mixed question of law and fact, then [the reviewing court] must break it down into its constituent parts and apply the appropriate standard of review for each part." *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993).

## III. DISCUSSION

Mikhail appeals the Bankruptcy Court's order overruling her objections to Hawasli's discharge under § 727(a)(2) for knowingly and fraudulently making transfers with the intent to hinder, delay, or defraud creditors and under § 727(a)(4) for knowingly and fraudulently making false statements under oath. ECF No. 10.

Judge Randon had overruled each of these exceptions after finding that Hawasli lacked fraudulent intent. ECF No. 4, PageID.912–917.

### 1. Standard of Review

The parties disagree over the correct standard of review. While Mikhail argues that the question of "[w]hether the Bankruptcy Court erred when it overruled Mikhail's objection to discharge under … Section 727(a)(4) is a question of law which the Court reviews de novo," ECF No. 10, PageID.1110, Hawasli argues that "[w]hether the debtor had the

requisite wrongful intent is a question of fact which an appellate court reviews for clear error," ECF No. 11, PageID.1921.

The Court agrees with Hawasli. The bankruptcy court's factual findings are reviewed under a clearly erroneous standard. *In re Jones*, 546 B.R. at 19. Whether a debtor had the requisite wrongful intent under § 727(a)(2) or § 727(a)(4) is a question of fact which we review for clear error. *Eifler v. Wilson & Muir Bank & Tr. Co.*, 588 F. App'x 473, 477 (6th Cir. 2014) ("Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact that we review for clear error."); *id.* (reviewing the bankruptcy's court finding of fraudulent intent under § 727(a)(2) under the clear error standard); *In re Wines*, 997 F.2d 852, 856 (11th Cir. 1993) ("Whether the debtor had the requisite wrongful intent is a question of fact which we review for clear error.").

During the August 13, 2026 hearing, counsel for Mikhail argued, for the first time, that a question of law was presented by Judge Randon's alleged failure to consider certain "indicia," *see In re Newell*, 321 B.R. 885, 889–90 (Bankr. N.D. Ohio 2005), or "badges," *see In re Cutler*, 291 B.R. 718, 723 (Bankr. E.D. Mich. 2003), of fraud that courts consider when assessing whether a pre-petition transfer of property showed fraudulent intent. Each of these "indicia" or "badges" are examples of circumstantial evidence that can indicate the existence of a fraudulent transfer.

This argument misreads the caselaw, however. These "indicia" or "badges" of fraud exist to *guide* the courts' factual determination as to

whether fraudulent intent has been shown. In other words, these examples of circumstantial evidence do not impose a mandatory legal rule or standard that a court is bound to apply—they are rather examples of conduct that can inform a judge's factual findings regarding the existence of fraudulent intent. Mikhail points to no case law holding that that the failure to consider any of these factors constitutes legal error. Moreover, as discussed in greater detail below, Judge Randon did not ignore the guidance of these cases suggesting indicia of possible fraudulent intent; he discussed the indicia in detail and applied them to the facts of the case.

Accordingly, the Court will review the bankruptcy court's findings that Hawasli lacked the requisite actual intent to defraud under a clearly erroneous standard.

**2. Section 727(a)(2)(A)**

Under § 727(a)(2)(A), the court shall not grant the debtor a discharge when "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed … property of the debtor, within one year before the date of the filing of the petition."

As the Sixth Circuit has explained, "[t]his section encompasses two elements: 1) a disposition of property, such as concealment, and 2) a

subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property." *In re Keeney*, 227 F.3d 679, 683 (6th Cir. 2000) (citation omitted). Actual intent is required for purposes of 727(a)(2)(A); constructive intent is not sufficient. *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) ("actual, rather than constructive, intent is required on the part of the debtor" (citation omitted)); *accord In re Wise*, 590 B.R. 401, 433 (Bankr. E.D. Mich. 2018) (Tucker, J.).

While "circumstantial evidence or a debtor's course of conduct may be used to infer the debtor's intent…, a finding of fraudulent intent is a question of fact that is highly dependent on the bankruptcy court's assessment of the debtor's credibility." *In re Hughes*, 490 B.R. 784, 792 (Bankr. E.D. Tenn. 2013) (citation omitted).

Additionally, when assessing whether a pre-petition transfer of property showed fraudulent intent, courts have looked to the following indicia:

> (1) a lack of adequate consideration for the property transferred; (2) a family or close relationship between the parties; (3) the retention of possession for use and benefit; (4) the financial condition of the transferor before and after the transfer; (5) the cumulative effect of the transactions and course of conduct after the onset of financial difficulties or threat of suit; and (6) the general chronology and timing of events.

*In re Newell*, 321 B.R. at 889–90.

Judge Randon found that Hawasli lacked fraudulent intent, and thus, the exception for discharge under § 727(a)(2)(A) did not apply to him. ECF No. 4, PageID.913. Noting that while "[t]he timing of some of Hawasli's transfers, particularly to the businesses of his sons, Mouhammad and Waref, are concerning because they were made during a time period in which Hawasli faced the possibility of a money judgment," Judge Randon found that Hawasli's explanation for these transfers to be "completely credible and detailed." *Id.* Specifically, Judge Randon found that

> Given the history of Hawasli's investments, the fact that he has been making speculative business investments since 2010, the financial transfers to his children and their businesses—many of which predated Mikhail's allegations of malpractice—and Hawasli' s (and his lawyer's) firm belief that he was in no legal or financial jeopardy from her lawsuit, Mikhail failed to prove that Hawasli made the transfers with intent to hinder, delay, or defraud a creditor. … Believing his medical intervention saved Mikhail's life, Hawasli simply continued to conduct business as he had always done.

*Id.*

Mikhail appeals this conclusion, arguing that Hawasli acted with the necessary fraudulent intent. In support, Mikhail does not articulate any purported mistake on the part of the bankruptcy court. Instead, Mikhail argues that Hawasli's pre-petition transfers showed his fraudulent intent,

There are a significant number of transactions made by Hawasli prior to his bankruptcy filing that were made with intent to hinder and delay creditors. Because of the sheer volume, Mikhail focused on the most egregious of these transfers.

In the year before Hawasli filed for bankruptcy, he paid $530,000 to Tahmeel FZ under the terms of the Subscription Agreement, which was entered into on the eve of the first trial date with Mikhail. This agreement and all the payments made under it bear many markings of transfers made with actual intent to hinder and delay Mikhail.

The first factor is lack of adequate consideration. On its face, it appears that purchasing stock may constitute adequate consideration. But a little digging reveals this so-called consideration was bogus. For Hawasli to complete this purchase, he would have to continue earning $1,000,000.00 per year tax free and then apply of this money to the Stock Purchase Agreement only. He could not use a penny of his gross income for any other expenses, including income taxes, real estate taxes, mortgage payments, and other costs of living. This of course would not happen. This all means the agreement was designed to fail and, of course, upon failure Tahmeel would keep all the payments and deliver no stock to Hawasli.

The second factor is close relationship. Hawasli's son owns Tahmeel. In addition, Hawasli added his wife's name to the Agreement despite never doing any other transaction with her for the purpose of attempting to exempt his interest in the asset. This factor weighs in favor of determining fraudulent intent.

The third factor is retention or possession for use or benefit. While this factor was not evident either way, Hawasli paid cash to his son's company in Dubai. There is every reason to believe that money is still there and just waiting for Hawasli to get past his issues with Mikhail.

> The fourth factor is the financial condition of Hawasli before and after the transfers. Clearly, Hawasli was cash broke when he filed for bankruptcy in large part because of the money he shipped to Dubai to his son's company despite receiving over $4,500,000.00 in the two years prior to his bankruptcy filing.
>
> The fifth factor is the cumulative effect of transactions and course of conduct after the onset of financial difficulties or threat of suit. The cumulative effect is Hawasli somehow burned through $4,500,000.00 in the two years before he filed for bankruptcy and had only $32.00 in cash left in his name. This was no accident as nearly every penny he received after taxes to family members or companies owned by family members.
>
> The sixth and final factor is timing of events. Hawasli executed the Stock Purchase Agreement thirty days before his first trial date with Mikhail. That alone should be sufficient for a finding of fraudulent intent.

ECF No. 10, PageID.1120–22.

Hawasli responds that,

> all of the facts set forth in Mikhail's Appeal Brief (to the extent the same are part of the record) were considered (and recited) by the Bankruptcy Court in the Post-Trial Opinion and Order. Considering all of these facts, the Bankruptcy Court reached its conclusion that no actual fraudulent intent was present based upon the testimony of the witnesses, including Dr. Hawasli. Mikhail points to no clear error on the part of the Bankruptcy Court and fails to even address the Court's reliance on the credibility of the witnesses or the reliance on their testimony. No clear error is identified and no basis for reversal exists.

ECF No. 11, PageID.1932.

Here, although Mikhail marshals the circumstantial evidence suggesting that Hawasli's pre-petition transfers of property showed his fraudulent intent, Mikhail does not show—or even attempt to show—that Judge Randon ignored this evidence or failed to explain his reasons for finding Hawasli to be credible on the issue of his intent. Mikhail thus fails to show how Judge Randon committed a clear error in his conclusion.

Indeed, Judge Randon considered the timing of Hawasli's transfers to his family members and to entities controlled by family members but found that Hawasli's explanation of these transfers was "completely credible and detailed." No. 4, PageID.913. In making this determination, Judge Randon considered that Hawasli had a history of speculative business investments and transfers to his children and their business that predated Mikhail's allegations of medical misconduct, and considered Hawasli's firm belief that he was in no legal and financial jeopardy from Mikhail's lawsuit. *Id.* Mikhail does not challenge this history of investments or transfers or that this history predated Mikhail's allegations. Nor does Mikhail challenge Judge Randon's finding that Hawasli had a genuinely held belief that he was in no legal and financial jeopardy from Mikhail's lawsuit.

Given these facts, it was not clearly erroneous for Judge Randon to conclude that Hawasli's pre-petition transfers of property did not show any fraudulent intent, even after considering the evidence marshaled by Mikhail.

In the absence of such a clear error, the Court will not disturb Judge Randon's assessment of Hawasli's credibility. As another court has explained when faced with a similar situation,

> Although [plaintiff-appellant] has identified evidence on which the bankruptcy court reasonably could have found that the debtor had fraudulent intent, the court chose to credit evidence to the contrary. It is not this Court's role to retry the case or to weigh the evidence as it sees fit. On the basis of the cold record alone, this Court does not have the definite and firm conviction that the bankruptcy court's decision to credit the testimony of the debtor, [and others] was clearly erroneous.

*In re Boyer*, 384 B.R. 44, 48 (D. Conn. 2008), *aff'd*, 328 F. App'x 711 (2d Cir. 2009).

Accordingly, the Court **AFFIRMS** the bankruptcy court's determination that Hawasli lacked the fraudulent intent required under § 727(a)(2)(A).

**3. Section 727(a)(4)(A)**

Under § 727(a)(4)(A), the court shall not grant the debtor a discharge when "the debtor knowingly and fraudulently, in or in connection with the case … made a false oath or account."

> In order to deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case.

*In re Keeney*, 227 F.3d at 685. "Statements made in bankruptcy schedules, statement of financial affairs and at 341 meetings are given under oath." *In re Johnson*, 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008). Additionally, as recognized by Judge Randon, *see* ECF No. 4, PageID.914, "[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural. A debtor is entitled to a starting presumption that most debtors are honest and do not ordinarily engage in fraudulent activities." *In re Cutler*, 291 B.R. 718, 727 (Bankr. E.D. Mich. 2003).

In her brief, Mikhail addresses each of the five elements necessary to be denied discharge under § 727(a)(4)(A). ECF No. 10, PageID.1113–17. However, Judge Randon rejected Mikhail's objection to Hawasli's discharge after concluding Hawasli lacked the fraudulent intent required under that statute and did not substantively address the other necessary elements. ECF No. 4, PageID.916–17. Because the Court finds that Judge Randon did not commit clear error in finding that Hawasli lacked the necessary fraudulent intent, the Court need not address the other elements.

Intent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression. A reckless disregard as to whether a representation is true will also satisfy the intent requirement." *In re Keeney*, 227 F.3d at 685–86 (cleaned up).

Under § 727(a)(4)(A),

> [t]he plaintiff must demonstrate actual, not constructive, fraud. However, since defendants will rarely admit their fraudulent intent, actual intent may be inferred from circumstantial evidence. A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive. On the other hand, the discharge is not to be denied when the untruth was the result of a mistake or inadvertence.

*In re Cutler*, 291 B.R. at 726 (citation omitted). "Often, resolution of the question of whether a false statement was made with intent to deceive will turn on the Court's assessment of the demeanor and credibility of the debtor." *In re West*, 328 B.R. 736, 750 (Bankr. S.D. Ohio 2004).

Judge Randon concluded that Hawasli lacked fraudulent intent, and thus, the exception for discharge under § 727(a)(4)(A) did not apply to him. ECF No. 4, PageID.916–17. Specifically, Judge Randon explained that

> The Court observed the demeanor of all witnesses—and particularly scrutinized Hawasli—while they testified. They were all credible and Hawasli provided a reasonable explanation for his failure to list the transfers from the HASS account on the SOFA or the spreadsheet that was attached to the SOFA.
>
> Hawasli explained that he believed the SOFA only required him to disclose personal transfers, not transfers made from his business account as the business was not in bankruptcy. Without ruling on whether Hawasli was required to list business transfers, the Court accepts it as an open question. Based on a review of the SOFA, however, the Court accepts

> Hawasli's explanation that he only had to list personal transfers. For example, Part 3 Question 7 of the SOFA asks, "Within 1 year before you filed for bankruptcy, did *you* make a payment on a debt you owed anyone who was an insider?" (Emphasis added). Part 5 Question 13 asks, "Within 2 years before you filed for bankruptcy, did *you* give any gifts with a total value of more than $600 per person?" (Emphasis added). Part 7 Question 18 asks, "Within 2 years before you filed for bankruptcy, did *you* sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?" (Emphasis added). Even if Hawasli's failure to disclose the transfers from his business account constitutes a material omission, it was not done with fraudulent intent. He plausibly believed his personal transfers were all he was required to provide.
>
> Notwithstanding his belief, Hawasli went above and beyond his understanding of what the SOFA required and disclosed his business transfers in a spreadsheet that was provided to the Chapter 7 Trustee at the beginning of the case. Even though this spreadsheet was not signed under oath, the Trustee had it in his possession during the 341 Meeting of Creditors, which was conducted under oath. The upshot is that Hawasli was completely transparent with both his personal and business transfers; Mikhail failed to prove the requisite fraudulent intent for denial of discharge under section 727(a)(4)(A).

*Id.*

Mikhail appeals this conclusion, arguing that Hawasli acted with the necessary fraudulent intent. As with her argument under § 727(a)(2)(A), Mikhail does not articulate any purported mistake on the part of the bankruptcy court. Instead, Mikhail argues that,

> The frequency alone of Hawasli's false statements and omissions gives rise to an inference of fraudulent intent. His one trial exhibit shows the pages and pages of undisclosed transfers made to insiders that were not disclosed in his Statement of Financial Affairs. He failed to disclose his second income and the fact that it was paid into the HASS account was not disclosed. He failed to disclose that he owes his daughter $80,000.00. The record has established that Hawasli repeatedly made false statements, and his omitted material information, all of which establishes his fraudulent intent.
>
> The fact that Hawasli separately disclosed some of these transactions to the Trustee in a spreadsheet that was not signed under oath does not satisfy his obligations under the Bankruptcy Code and his requirement to disclose all information requested in the Schedules and Statement of Financial Affairs.

ECF No. 10, PageID.1116–17.

Hawasli responds that,

> Mikhail takes issue with the Bankruptcy Court's failure to infer fraudulent intent, but cites no clear error in the Court's decision. Without exception, all of the 'evidence' recited in Mikhai's [sic] Brief on Appeal was presented to and considered by the Bankruptcy Court in reaching its detailed conclusion. Under no circumstances does the same establish clear error or justify Mikhail's request for reversal.

ECF No. 11, PageID.1929.

Judge Randon accepted Hawasli's explanation that he understood that he only had to list personal transfers on his SOFA after detailing the legitimate unclarity of the SOFA forms on the question of whether only personal transfers had to be listed. ECF No. 4, PagelD.916–17.

Additionally, Judge Randon considered that Hawasli had provided the Trustee with the spreadsheet, although not signed under oath, listing the business transfers which Mikhail challenges as having been fraudulently omitted from the SOFA. *Id.* at PageID.917.

Given these facts, which Mikhail does not challenge, it was not clearly erroneous for Judge Randon to find that Hawasli's omissions of certain business transfers from his SOFA did not show any fraudulent intent, even considering the evidence marshaled by Mikhail.

Additionally, Judge Randon accepted Hawasli's explanation after having had the opportunity to observe Hawasli's demeanor during the trial. ECF No. 4, PagelD.916. The Court will not overturn Judge Randon's credibility determination in the absence of any evidence of a mistake of justice or clear error. "The bankruptcy court, as the trier of fact, was in the best position to assess demeanor and tone." *Sullivan v. Miller*, No. 24-12837, 2025 WL 2437246, at *3 (E.D. Mich. Aug. 22, 2025) (Goldsmith, J.).

Accordingly, the Court **AFFIRMS** the bankruptcy court's determination that Hawasli lacked the fraudulent intent required under § 727(a)(4)(A).

## IV. CONCLUSION

For the reasons stated above, the Court **AFFIRMS** the decision of the bankruptcy court.

**SO ORDERED.**

Dated: August 17, 2026

s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE